**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANNETTE CARR<br>2545 Valley Drive<br>Lancaster, PA 17603<br><br>Plaintiff,<br><br>vs.<br><br>RKL LLP<br>1800 Fruitville Pike<br>Lancaster, PA 17601<br><br>Defendant. | : CIVIL ACTION – LAW<br>: No.<br>:<br>:<br>:<br>:<br>: *Electronically filed*<br>:<br>: JURY TRIAL OF 12 DEMANDED<br>:<br>:<br>:<br>: |

## COMPLAINT

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 as the action arises under the Family and Medical Leave Act of 1993, 107 Stat. 6, 29 U.S.C. §2601 et. seq.

2. Venue is proper in the Eastern District of Pennsylvania because the Plaintiff lives in Lancaster County, the incidents in question occurred in Lancaster County, and Defendant employed Plaintiff in Lancaster County.

## PARTIES

3. Plaintiff is Annette Carr (hereinafter "Plaintiff"), a resident of Lancaster County, Pennsylvania, who currently and at the time of the incidents in question, lives at 2545 Valley Drive, Lancaster, PA 17603.

4. Defendant is RKL LLP (hereinafter "Defendant"), a limited liability general partnership, with a principal and registered office located at 1800 Fruitville Pike, Lancaster, PA 17601.

## FACTUAL BACKGROUND

5. Plaintiff began working for Defendant as a temporary employee beginning January 21, 2023. Plaintiff was then hired as a full-time employee in April 2023, two years before she was terminated.

6. Plaintiff was working as an Accounts Receivable Specialist for Defendant earning $65,000 annually plus overtime.

7. Plaintiff had at least 1,250 hours of service credited during the twelve-month period immediately preceding her Family and Medical Leave.

8. Defendant employed at least 50 employees within a 75-mile radius of Plaintiff's work site with Defendant.

9. Plaintiff was not considered a "key" employee as described in §825.217 of the Family and Medical Leave Act regulations by the Defendant.

10. On November 26, 2024, Plaintiff was fired from her job in violation of the Family and Medical Leave Act (hereafter "FMLA").

11. In October of 2024, Plaintiff received a merit increase and a bonus for her performance. Plaintiff had received a bonus six (6) months prior to that as well.

12. In October 2024, Plaintiff was out of work for about a month due to pneumonia for which she supplied Defendant a physician's note.

13. Plaintiff was the only person required to be in the office every single day and had an important role scanning in checks and processing them.

14. Defendant did not like when Plaintiff took time off because it found it difficult to get other employees to come into the office.

15. Approximately one week after returning to work from her pneumonia illness, Plaintiff told Defendant's boss, Finance Director Bradley Bowers that she would need to go out on FMLA leave in March of 2025 (approximately 5 months later) because of a "serious health condition" as defined under the Family and Medical Leave Act.

16. Plaintiff was due to have surgery for an ulcer in March of 2025.

17. Plaintiff additionally stopped in and spoke with Human Resources Representative Nicole Jankowski regarding the March 2025 FMLA and asked if

there would be any issues taking FMLA. Ms. Jankowski assured Plaintiff that there would be no issues and offered to help Plaintiff fill out the paperwork if needed.

18. In November of 2024, Plaintiff asked her boss, Mr. Bowers, for a day off around Thanksgiving 2024.

19. Mr. Bowers ignored her request to take off and instead told Plaintiff that he wanted to have a 1:1. Plaintiff asked what the 1:1 was for, however Mr. Bowers, who worked remote most of the time, never replied.

20. Mr. Bowers sent Plaintiff a meeting invite for November 26, 2024.

21. On November 25, 2024, the day before Plaintiff was terminated, Plaintiff found her job posted on Indeed.

22. During the November 26, 2024 meeting, Plaintiff was terminated.

23. During the termination meeting, Plaintiff was simply told that the ‘integrity of a report was compromised’ and they were letting her go.

24. Plaintiff was confused by Defendant’s allegation, and asked Defendant repeatedly to provide specifics and/or show her proof of Defendant’s allegation.

25. Defendant’s representatives simply said that they would not provide any specifics and that they did not have to.

26. Prior to November 26, 2024, Defendant never conveyed to Plaintiff any inclination of unsatisfactory performance. Plaintiff never received a verbal or written warning from Defendant, and Plaintiff was never put on a performance improvement plan.

27. Plaintiff was qualified for the job as evidenced by her previous satisfactory performance, no complaints, and a recent merit and bonus for her performance.

28. Plaintiff avers that Defendant used the vague allegation of the "integrity of a report" as pretext for her termination because of her protected activity.

29. Plaintiff avers that her termination was in retaliation to Plaintiff's proposed FMLA leave in March of 2025.

30. Defendant paid Plaintiff until December 17, 2025, even though Defendant claimed that her report justified her being terminated November 26th.

31. Defendant did not explain why it paid Plaintiff until December 17, 2025 and did not require any work.

32. Plaintiff avers that Defendant terminated her in retaliation to her assertion of rights under the FMLA.

33. The Unemployment Compensation determination found that Plaintiff was eligible for unemployment since Defendant stated that Plaintiff's separation was due to a layoff.

34. At all relevant times, Plaintiff's condition met the definition of having a serious health condition under the FMLA.

35. If left untreated, a pre-planned medical treatment qualifies as a serious health condition if the underlying illness if left untreated would likely result in a period of incapacity of more than 3 consecutive calendar days. See 29 CFR § 825.115(e).

36. Because a severe peptic or bleeding ulcer carries a high risk of life-threatening internal bleeding or perforation if left unscheduled, a proactive surgery designed to prevent that major incapacity satisfies definition.

37. Alternatively and additionally, Plaintiff's surgery and its follow-up care where she would be out of work could be anticipated to last, and did last, several weeks, and this would and did keep her out of work more than three consecutive calendar days.

38. Alternatively and additionally, Plaintiff during that time before the surgery had a continuing regime of medication for treatment of her ulcer and had both (1) had treatment two or more times by a health care provider and (2)

treatment by a health care provided that resulted in a regimen of continuing treatment of prescription drugs under the supervision of the health care provider.

39. Alternatively and additionally, Plaintiff could be anticipated (and did eventually have) pre-operative visits with a surgeon or physician, who conducted the ulcer surgery, in-person post-operative follow-up visit with a surgeon or physician within 7 days of the first day of incapacity, plus a regimen of continuing supervised care (such as a prescribed course of post-surgical medications or specific wound care instructions).

40. Defendant intentionally, willfully, recklessly and/or in bad faith violated the FMLA Act by terminating Plaintiff when she apprised the employer that (1) her leave was medically legitimate and (2) when she provided a legitimate, FMLA-related excuse as well as a doctor’s note that would have established, with the other information in the Employer’s possession, that the leave was FMLA related.

41. The Defendant took adverse action against Plaintiff, but cannot meet its burden of showing the (a) the adverse action was taken in subjective good faith, and (b) the employer had objective, reasonable grounds for believing they were not violating the FMLA.

42. There is a causal link between the adverse actions and the

employment actions herein.

43. As a result of the termination, Plaintiff was not eligible then for FMLA at her new employer. As a result, she suffered medical and financial hardship. Plaintiff's surgery was delayed, and Plaintiff had to return to work 3 days after her surgery when she medically should have still been out of work.

44. Plaintiff gave to the employer's representatives paperwork which would have shown that Plaintiff was eligible for FMLA leave.

45. Plaintiff was fired because she exercised rights under the Family and Medical Leave Act.

46. Defendant violated the FMLA.

47. Defendant has established rules and procedures that violate the Family and Medical Leave Act and may have terminated Plaintiff pursuant to those rules and procedures.

48. Plaintiff was earning $63,000 a year and was receiving benefits at the time of her termination.

49. Defendant is liable for liquidated damages under the FMLA.

50. The FMLA affords appropriate remedies to an eligible employee if an employer has violated the FMLA, including but not limited to (1) wages, employment benefits or other compensation denied or lost by such violation; (2) an

amount of liquidated damages unless the employer's violation was in good faith and the employer had reasonable grounds for believing the employer did not violate the Act; and (3) equitable relief such as employment, reinstatement or promotion.

51. An employer found in violation of the FMLA must pay to the employee a reasonable attorney's fee, the employee's expert witness fees, and other costs of the action.

## COUNT I

## ANNETTE CARR v. RKL LLP

## INTERFERENCE WITH EMPLOYEE'S ABILITY TO MEANINGFULLY EXERCISE HER RIGHT TO LEAVE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

52. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

53. Under the FMLA, an "eligible employee" is an employee of a covered employer who (a) has been employed by the employer for at least 12 months, (b) has been employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave and (c) is employed at a work site where 50 or more employees are employed by the employer within 75 miles of that work site.

54. Plaintiff Annette Carr was an eligible employee under the FMLA and gave notice of here internation to take FMLA leave.

55. Plaintiff invoked a right to FMLA benefits.

56. Plaintiff was denied benefits to which she was entitled.

57. Alternatively, Defendant terminated Plaintiff by applying rules and procedures that it knew or should have known were in violation of the FMLA.

58. Plaintiff invoked a right to FMLA benefits.

59. Plaintiff suffered an adverse action or employment decisions.

60. The adverse action was causally related to the Plaintiff's invocation and/or exercise of FMLA rights.

61. Defendant interfered with, restrained, or denied an FMLA right (such as refusing to grant leave, discouraging the use of leave, or failing to restore the employee to the same or an equivalent position). See 29 U.S.C. §2615(a)(1).

62. Defendant is liable for liquidated damages.

63. Plaintiff sustained damages as a result of Defendant's conduct, including lost compensation and benefits and actual monetary losses, compensatory damages, delayed treatment, liquidated damages, attorney's fees, costs and witness fees, and is entitled to equitable relief, including reinstatement, and an additional amount for the tax consequences for an award in Plaintiff's favor under the Third

Circuit's Eshelman doctrine.

WHEREFORE, Plaintiff demands the following relief from Defendant:

a) Wages, employment benefits or other compensation denied or lost by such violation; Back pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest;

b) An amount of liquidated damages unless the employer's violation was in good faith and the employer had reasonable grounds for believing the employer did not violate the Act; liquidated damages equal to the sum of back pay and interest as provided by the FMLA, absent Defendant's proof of good faith and reasonable grounds, awarded in addition to, and not in lieu of, back pay and interest under the FMLA;

c) Equitable relief such as employment, reinstatement or promotion or payment of health care expenses; Reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

d) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

e) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

f) An order directing Defendant to (i) properly designate Plaintiff's leave as FMLA-protected, (ii) purge any references to FMLA-related discipline or termination reasons from Plaintiff's personnel and attendance records, and (iii) provide written notice of correction to any third parties to whom adverse reasons were communicated, including unemployment authorities;

g) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons and FMLA leave;

h) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the FMLA;

i) The employee's expert witness fee, if any;

j) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

k) Reinstatement to her former position (with all back benefits she would have been entitled to); Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

l) Other costs of the action;

m) An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

n) Interest on all monetary components as allowed by law;

o) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine;

p) A declaration that Defendant's conduct violated the FMLA;

q) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

## COUNT II

## ANNETTE CARR v. RKL LLP

## DISCRIMINATION/RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

64. Plaintiff realleges and incorporates the foregoing paragraphs as if they were set forth fully herein.

65. Plaintiff Annette Carr was an eligible employee under the FMLA when she went out on leave the Employer should have known qualified for FMLA coverage.

66. Plaintiff invoked a right to FMLA benefits.

67. Plaintiff was denied benefits to which she was entitled.

68. Defendant terminated Plaintiff because she exercised rights under the FMLA.

69. Alternatively, Defendant terminated Plaintiff by applying rules and procedures that it knew or should have known were in violation of the FMLA.

70. Plaintiff invoked a right to FMLA benefits.

71. Plaintiff suffered an adverse action or employment decisions.

72. The adverse action was causally related to the Plaintiff's invocation and/or exercise of FMLA rights.

73. Defendant unlawfully terminated, retaliated, and otherwise discriminated against Plaintiff because of conduct protected by the FMLA. See 29 U.S.C. § 2615(a)(2).

74. Defendant's conduct was not in good faith, or otherwise acted intentionally, willfully, or wantonly, and the employer did not have reasonable grounds for believing it did not violate the FMLA.

75. Defendant is liable for liquidated damages.

76. Plaintiff sustained damages as a result of Defendant's conduct, including lost compensation and benefits and actual monetary losses, compensatory damages, liquidated damages, attorney's fees, costs and witness fees, and is entitled to equitable relief, including reinstatement, and an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine.

WHEREFORE, Plaintiff demands the following relief from Defendant:

a) Wages, employment benefits or other compensation denied or lost by such violation; Back pay including base wages, overtime, premium pay, differentials, bonuses, and value of lost benefits (including employer-paid health insurance premiums) from the date of termination to judgment, with pre- and post-judgment interest;

b) An amount of liquidated damages unless the employer's violation was in good faith and the employer had reasonable grounds for believing the employer did not violate the Act; liquidated damages equal to the sum of back pay and interest as provided by the FMLA, absent Defendant's proof of good faith and reasonable grounds, awarded in addition to, and not in lieu of, back pay and interest under the FMLA;

c) Equitable relief such as employment, reinstatement or promotion or payment of health care expenses; Reinstatement to Plaintiff's former position or a substantially equivalent position with the same seniority, benefits, and terms and conditions; or, in the alternative, front pay in an amount sufficient to make Plaintiff whole for loss of future earnings and benefits;

d) Restoration of seniority, accruals, retirement service credit, and all other benefits as if continuously employed, or a monetary equivalent if restoration is infeasible, including payment of missed employer retirement contributions and lost vesting credit;

e) Reimbursement or direct payment of COBRA premiums or equivalent medical insurance costs incurred due to loss of employment, plus out-of-pocket medical expenses caused by the interruption of coverage;

f) An order directing Defendant to (i) properly designate Plaintiff's leave as FMLA-protected, (ii) purge any references to FMLA-related discipline or termination reasons from Plaintiff's personnel and attendance records, and (iii) provide written notice of correction to any third parties to whom adverse reasons were communicated, including unemployment authorities;

g) Production of Plaintiff's complete personnel file and expungement of all discipline related to the asserted pretextual reasons and FMLA leave;

h) Reasonable attorney's fees, litigation expenses, expert witness fees, and costs of suit, including non-taxable costs, as authorized by the FMLA;

i) The employee's expert witness fee, if any;

j) A neutral reference limited to dates of employment and position, non-disparagement, and correction/withdrawal of adverse statements made to unemployment authorities;

k) Reinstatement to her former position (with all back benefits she would have been entitled to); Make-whole relief calculated from the date of termination through the date of judgment (and, for front pay, for the court-determined period thereafter), less interim earnings consistent with mitigation principles, without offset for unemployment compensation unless required by law;

l) Other costs of the action;

m) An additional amount for the negative tax consequences of a lump-sum award pursuant to the Third Circuit's Eshelman doctrine, applied to back pay, front pay, and any lump-sum taxable components;

n) Interest on all monetary components as allowed by law;

o) An additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's Eshelman doctrine;

p) A declaration that Defendant's conduct violated the FMLA;

q) And such other and further legal and equitable relief as the Court deems just and proper to fully make Plaintiff whole, including ancillary orders necessary to effectuate reinstatement and non-retaliation.

Respectfully submitted,

Dated: _November 24, 2026_

By:_*/s/ Edward C. Sweeney*_____

Edward C. Sweeney, Esquire
Attorney for Plaintiff
I.D. No. 64565
102 Pickering Way, Suite 403
Exton, PA 19541
(610) 594-1600
Validation of signature code: ECS1942